1   GILBERT R. SEROTA (SBN 75305)
    MARJORY GENTRY (SBN 240887)
2   RYAN M. KEATS (SBN 296463)
    ARNOLD & PORTER LLP
3   Three Embarcadero Center, 10th Floor
    San Francisco, CA 94111
4   Telephone:    415.471.3100
    Facsimile:    415.471.3400
5   Email: Gilbert.Serota@aporter.com
    Email: Marjory.Gentry@aporter.com
6   Email: Ryan.Keats@aporter.com

7   Attorneys for Defendants
    YELP INC., JEREMY STOPPELMAN, ROBERT J. KROLIK and
8   GEOFFREY DONAKER

9

10                       UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                         SAN FRANCISCO DIVISION

13

14   JOSEPH CURRY, Individually and on Behalf of      Case No. 3:14-cv-03547
     All Others Similarly Situated,
15                                                    **CLASS ACTION**
                          Plaintiff,
16                                                    **DEFENDANTS' MOTION TO DISMISS
           v.                                         THE FIRST AMENDED COMPLAINT**
17
     YELP INC., JEREMY STOPPELMAN,                    Date:     September 10, 2015
18   ROBERT J. KROLIK and GEOFFREY                    Time:     2:00 p.m.
     DONAKER,                                         Place:    Courtroom 9 - 19th Floor
19                                                    Judge:    Hon. Jon S. Tigar
                          Defendants.
20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────
        YELP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT          3:14-cv-03547

1

**TABLE OF CONTENTS**

2

<u>**Page**</u>

3 INTRODUCTION ................................................................................. 1

4 ARGUMENT ..................................................................................... 3

5     I. NOTHING ADDED IN THE FAC OVERCOMES PLAINTIFFS' FAILURE TO
6         PROPERLY ALLEGE FALSITY AND MATERIALITY. ............................... 3

7         A. "First Hand" And "Authentic" Allegations. .......................... 3

        B. Alleged Advertising Manipulation. ..................................... 4
8

9         C. The FAC Fails To Properly Allege That The FTC Complaints Released In
        April 2014 Altered The Mix Of Information Available To Investors. ........ 5
10

11         D. The FAC Pleads No New Facts That Properly Allege That Yelp
        Misrepresented Its Advertising Sales Practices. ..................... 8

12         E. Nothing In The FAC Pleads That The Release Of The FTC Complaints As
13         To Advertising Materially Altered The Information Already Available To
        Investors. ........................................................... 10

14     II. THE FAC DOES NOT SUFFICIENTLY PLEAD LOSS CAUSATION. .............. 11

15     III. THE FAC DOES NOT CONTAIN FACTS SUFFICIENT TO CREATE A
16         STRONG INFERENCE OF SCIENTER. ................................................ 13

17         A. The Newly Alleged "Facts" Do Not Establish "Suspicious" Sales Of Stock
        By Insiders During The Alleged Class Period. ....................... 13
18

19         B. Nothing In The FAC Provides Any Other Facts Sufficient To Plead
        Scienter. ............................................................ 14

20     IV. BECAUSE PLAINTIFFS CANNOT ALLEGE A CLAIM UNDER SECTION
        10(b), THE SECTION 20(a) CLAIM MUST ALSO BE DISMISSED. ........... 15
21

CONCLUSION ................................................................................... 15
22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ................................................................. 3

5

6

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ................................................................. 15

7

*In re Lululemon Sec. Litig.*,
    No. 14-1664-cv, 2015 WL 2330056 (2d Cir. May 15, 2015) ................. 4

8

9

*In re Lululemon Sec. Litig.*,
    No. 13 Civ. 4596 (KBF), 2014 WL 1569500 (S.D.N.Y. Apr. 18, 2014) .... 4

10

11

*In re Netflix Sec. Litig.*,
    No. C04-2978 FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005) ........ 4

12

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ................................................................. 14

13

14

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ............................................................... 14

15

*Levitt v. Yelp! Inc.*,
    No. C 10-1321 MHP, 2011 U.S. Dist. LEXIS 99372 (N.D. Cal. Mar. 22, 2011) .... 8

16

17

*Levitt v. Yelp! Inc.*,
    No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011), *aff'd on other grounds*, 765 F.3d 1123 (9th Cir. 2014) .......... 7

18

19

*Loos v. Immersion Corp.*
    762 F.3d 880 (9th Cir. 2014) ................................................................. 11

20

21

*Matrixx Initiatives, Inc. v. Siracusano*,
    —U.S.— , 131 S. Ct. 1309 (2011) ......................................................... 5, 10

22

23

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ............................................................... 13

24

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ................................................................. 13, 14

25

26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................. 13

27

28

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) .............................................................................. 3

**STATUTES AND RULES**

Securities Exchange Act of 1934 §20(a),
    15 U.S.C. §78t(a)                                                                                           15

SEC Rule 10b-5, 17 C.F.R. 240.10b-5 (2015)                                                          1, 13

Fed. R. Civ. P. 12(b)(6)                                                                                         1

**OTHER AUTHORITIES**

Federal Trade Commission, Complaints Against Yelp (as of March 2014), *available at*
    http://www.ftc.gov/system/files/attachments/frequently-requested-records/
    yelpcmpts.xlsx.                                                                                              6, 9

NYSE Number of Listed Companies (1929-2002), NYSEData.com,
    http://www.nyxdata.com/nysedata/asp/factbook/viewer_edition.asp?mode=table&key=3
    010&category=5.                                                                                              8

1    PLEASE TAKE NOTICE that on September 10, 2015, at 2:00 p.m., or as soon thereafter as

2    counsel may be heard, in Courtroom 9, 19th Floor, of this Court, located at 450 Golden Gate

3    Avenue, San Francisco, CA 94102, Yelp Inc. ("Yelp") and the three individual defendants will and

4    hereby do move the Court to dismiss the First Amended Complaint ("FAC") under Federal Rule of

5    Civil Procedure 12(b)(6) for failure to state a claim for relief.

6    As we show below, the FAC does not come close to meeting the rigorous pleading standards

7    applied to putative securities class actions.  The FAC does not address the many deficiencies this

8    Court previously held required dismissal of Plaintiffs' Consolidated Class Action Complaint

9    ("Consolidated Complaint").  Given that Plaintiffs have failed to adequately address those

10   deficiencies, Defendants seek dismissal of the FAC without leave to amend.

11   **INTRODUCTION**

12   This is a motion by Defendants to dismiss Plaintiffs' First Amended Complaint (Dkt. No.

13   55) on the grounds that it fails to plead essential elements of a violation of Rule 10(b)-5.  Simply

14   put, the FAC does not come close to curing the many deficiencies that this Court identified in its

15   Order Dismissing the Consolidated Complaint (Dkt. No. 48) ("Order") and which the Court further

16   explained in its Order Denying Request For Leave To File Motion For Reconsideration (Dkt. No.

17   54) ("Reconsideration Order").  Each of the four elements of the 10b-5 claim remains inadequate,

18   and each defect independently supports dismissal of the FAC, this time with prejudice.

19   1.    **Falsity**:  This Court found that the content of FTC complaints released in 2014 did

20   not prove that Yelp misstated anything about the "first hand" and "authentic" nature of the reviews

21   posted on its sites or that it lied about the lack of a link between advertising and the filtering of

22   reviews.  The Court relied on the lack of first-hand knowledge by the relative handful of

23   complainants as compared to the millions of businesses reviewed on Yelp's sites. It also found that

24   Yelp's allegedly false statements were not unqualified, but included express disclosures about the

25   existence of unreliable reviews, Yelp's efforts to combat them, Yelp's filtering of reviews, and

26   disclosure that businesses were complaining about an alleged connection between solicitation of

27   advertising and Yelp's publication of reviews.  The Court took judicial notice of materials showing

28   both of these issues also were previously disclosed and discussed by third parties before April 2014.

The FAC contains nothing new.  It still relies only on the release of the complaints identified in the Consolidated Complaint without adding a single new fact or source.  Nothing shows that those complaints were anything but second-hand and of the very type and nature disclosed by Yelp and others long before April 2014.

2.      **Materiality**:  This Court held that the nature of the complaints released by the FTC in April 2014 did not materially alter the mix of information on these subjects already in the hands of investors.  The FAC not only does not cure this issue, it is considerably weaker than the Consolidated Complaint.  First, the FAC now expressly concedes that some 700 of the Complaints released by the FTC in 2014 were previously released in 2012, and were then the subject of media attention.  Second, by summarizing the substance of the complaints in Exhibit 6, it is apparent that at least 522 of the newly released complaints have nothing to do with either of the two issues in this case.  Third, the FAC contains exhibits published *before April 2014*, disclosing to investors the same type and nature of complaints released in April 2014.  In combination with Yelp's prior disclosures and the third party materials in the record, the facts in the FAC do not plead materiality.

3.      **Loss Causation**:  Plaintiffs' prior loss causation pleadings failed because Plaintiffs did not identify a disclosure in April 2014 that revealed fraud with the specificity required by the Ninth Circuit.  The FAC contains nothing new.  Its reference to the results of an "event study" from an unidentified source fails to address the absence of a disclosure revealing fraud.  Nor does the FAC address the fact that the alleged "disclosures" in articles by The Wall Street Journal, The Street, and others, which allegedly caused the stock to drop, *did not* themselves reveal the content or nature of the FTC complaints released in April 2014. Accordingly, there is now good reason to conclude from the FAC that the stock drop in April 2014 was related only to the *existence* of complaints, not to their *content*.  That makes loss causation even more remote.

4.      **Scienter**:  The Court dismissed the Consolidated Complaint, in part, because plaintiffs had not shown sufficient facts to establish a strong inference of scienter.  With respect to the theory that the officers of Yelp must have known about the falsity of statements simply by virtue of their positions in the company, the Court found the allegations insufficient.  Plaintiffs continue to be stymied by the fact that they simultaneously contend that the FTC complaints released in 2014

were new, but that the officers should have known about them.  No new facts in the FAC fill the

void in that logic.  With respect to sales of stock by insiders, the FAC fails to respond to the Court's

holding that such sales cannot be relevant to an inference of scienter without a factual showing that

they represent a suspicious departure from prior trading patterns.  Like the Consolidated Complaint,

the FAC offers no facts showing prior sales patterns or curing the evident inconsistencies in

Plaintiffs' theory.

　　　In sum, the FAC only repackages the same insufficient "facts" Plaintiffs relied on in the

Consolidated Complaint.  It should be dismissed with prejudice on the basis of the deficiencies

described herein.

## ARGUMENT

### I.　　NOTHING ADDED IN THE FAC OVERCOMES PLAINTIFFS' FAILURE TO PROPERLY ALLEGE FALSITY AND MATERIALITY.

　　　In its opinion dismissing the Consolidated Complaint, this Court held that for a statement by

an issuer defendant to be false or misleading, a plaintiff must plead with specificity that it gave "a

reasonable investor the impression of a state of affairs that differs in a material way from the one

that actually exists."  Order (Dkt. No. 48) at 9 (quoting *Berson v. Applied Signal Tech., Inc.*, 527

F.3d 982, 985 (9th Cir. 2008)).  The Court held that to establish materiality a plaintiff must plead a

"substantial likelihood that the disclosure of the omitted fact would have been viewed by the

reasonable investor as having significantly altered the 'total mix' of information made available."

*Id.* (quoting *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)).

### A.　　"First Hand" And "Authentic" Allegations.

　　　Applying these standards, the Court held that Yelp's alleged statements about the "first

hand" and "authentic" quality of the reviews hosted on its site were not materially false and

misleading because investors were informed and generally understood that user-generated business

reviews could not always be authentic and first hand.  Yelp itself repeatedly informed the investing

public of the existence of unreliable reviews and its efforts to address them.  Order (Dkt. No. 48) at

10.  Second, the Court held that: "Customer complaints indicating that some unreliable reviews

1  remained on the Yelp website after business owners had reported them to Yelp do not establish that

2  Yelp was making no efforts to screen or filter inauthentic reviews." *Id.* at 11.[1]

3      Accordingly, the Court held that the Consolidated Complaint failed to properly allege falsity

4  and materiality as to the "first hand" and "authentic" allegations. *Id.*  The court relied, in part, on

5  the lower court opinion in *In re Lululemon Securities Litigation*, No. 13 Civ. 4596 (KBF), 2014 WL

6  1569500 (S.D.N.Y. Apr. 18, 2014), for the proposition that the fact of product quality issues does

7  not render false an issuer's general statements of product quality. *See* Order (Dkt. No. 48) at 10-11.

8  The Second Circuit recently affirmed that decision. *In re Lululemon Sec. Litig.*, No. 14-1664-cv,

9  2015 WL 2330056 (2d Cir. May 15, 2015).

10      **B.      Alleged Advertising Manipulation.**

11      The Court also found the allegations in the Consolidated Complaint inadequate to properly

12  plead that Yelp falsely denied that it manipulated reviews in favor of advertisers or against those

13  businesses that chose not to advertise.  The Court found that Plaintiffs' sole reliance on the April

14  2014 release of complaints received by the FTC alleging a relationship between advertising and the

15  filtering of reviews did not establish either falsity or materiality.

16      First, the Court found that the allegations that Yelp tied advertising to filtering of reviews

17  did not establish that Yelp was in fact manipulating reviews based on sales of advertising and,

18  therefore, did not establish falsity.  Order (Dkt. No. 48) at 13.  Second, the Court found that Yelp

19  had "disclosed the existence of persistent allegations that Yelp manipulated reviews in favor

20  advertisers in its Registration Statement," including reference to those allegations made in 2010 in

21

22  _____

[1] The Court agreed with Judge Smith's holding in *In re Netflix Securities Litigation*, No. C04-2978
FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005) that customer complaints do not "independently
23  suffice" to establish the falsity of an issuer's representations.  Order (Dkt. No. 48) at 13-14.  The
FAC alleges that the complaints in the FTC's files were not all "customer complaints" because the
24  local businesses that authored complaints were not all customers of Yelp.  FAC (Dkt. No. 55)
¶¶2(a), 90.  According to the FAC, some of the complainants were "local business owners who
25  were not customers, but instead **non-customers**, [being pressured] to become paying Yelp clients."
*Id.* ¶90.  But the FAC does nothing to explain how complaints by *potential* Yelp customers have
26  greater significance than complaints authored by actual customers.  To the contrary, complaints by
potential customers are logically less trustworthy than the customer complaints in *Netflix* as they
27  were authored by individuals who chose not to do business with Yelp and have even less access to
information regarding Yelp's business practices than do customers who have done or are doing
28  business with Yelp.

*Levitt v. Yelp! Inc.*[2]  *Id.* at 12 n.3.  Third, the Court reviewed the type of consumer complaints

alleged in the Consolidated Complaint and held that the market had not been exposed to

"information that powerfully demonstrates [that] Defendants' denials are not credible, altering the

'total mix' of information."  *Id.* at 16.  The Court found that the complaints released by the FTC "do

not paint a uniform picture of Yelp's allegedly extortionate practices" (*id.* at 14), that only a handful

of the newly released complaints actually identified alleged statements by Yelp employees (*id*. at

15), and that the allegedly corroborative nature of the complaints is diluted by the fact that they

occurred over six years and represent only a tiny fraction of the business reviewed on Yelp (*id.* at

14).[3]

       The Court, therefore, concluded that the release of the FTC complaints in April 2014

addressing alleged manipulative advertising practices did not prove falsity or alter the mix of

information available to investors.

### C.     The FAC Fails To Properly Allege That The FTC Complaints Released In April 2014 Altered The Mix Of Information Available To Investors.

       The FAC relies on the same April 2014 disclosure of complaints that the Court previously

held to be insufficient to demonstrate falsity.  Instead of adding new factual allegations, Plaintiffs

simply repackage the same FTC complaints relied upon in the Consolidated Complaint and attempt

to draw from them demonstrably unfounded and misleading conclusions.  Like the Consolidated

Complaint, the FAC remains based on complaints about a *tiny fraction* of the tens of millions of

reviews on Yelp's sites by a *tiny fraction* of the tens of millions of businesses listed on the sites.

The FAC continues to rely exclusively on second-hand, speculative and conclusory allegations

made by unidentified persons evidencing no personal knowledge of Yelp's actual policies and

practices.  The FAC contains nothing that undermines or detracts from Yelp's express prior

---

[2] In denying Plaintiffs' request to file a motion for reconsideration, the Court reiterated that the "Yelp Defendants had not concealed the existence of the complaints" and cited express disclosures in the Registration Statement describing to investors' complaints of alleged advertising manipulation.  Reconsideration Order (Dkt. No. 54) at 2.

[3] In contrast, the defendants in *Matrixx Initiatives, Inc. v. Siracusano*, —U.S.— , 131 S. Ct. 1309, 1322-23 (2011) were alleged to have *failed to disclose* complaints by physicians and users claiming that defendants' cold remedy caused anosmia.

disclosures of the existence of unreliable reviews and persistent complaints by businesses (incorrectly) tying advertising offerings to its filtering of reviews. The FAC, therefore, fails to sufficiently allege falsity or materiality.

Not only does the FAC fail to allege facts additional to those relied upon in the Consolidated Complaint, the FAC is considerably weaker than the Consolidated Complaint in at least two important respects. First, the FAC now concedes that *over 700* of the complaints released by the FTC in April 2014 *had been previously published. See* FAC (Dkt. No. 55) ¶72. This concession in the FAC underscores that the FTC's release of complaints in April 2014 added nothing new as to the nature or subject of the complaints and, therefore, did not alter the mix of material information already available to investors. As this Court recognized in its opinion, Yelp itself, the Complaint in *Levitt*, and media articles pre-dating the class period made investors aware of such allegations.[4] The FAC now adds to that mix of information the fact of the FTC's prior release of complaints *disclosing to the investing public* both types of complaints at issue here—the supposed posting of false reviews and the alleged tie between advertising and filtering of reviews.

Second, by providing descriptions of the released complaints in Exhibit 6, the FAC itself shows that its allegation that over 2,000 complaints suggested fraud by Yelp is a vast overstatement. Exhibit 6 shows that at least 522 of the complaints released by the FTC in April 2014 have absolutely nothing to do with either unreliable reviews or of advertising manipulation and more than 100 are duplicates of other complaints. For example, at least 75 of the complaints in Exhibit 6 to the FAC relate to the Do Not Call Registry and not about any subject relevant to this case.[5] As

---

[4] The Court previously took judicial notice of the nearly 700 previously-released complaints (Order (Dkt. No. 48) at 6-7) as well as Exhibit U to the Declaration of Gilbert R. Serota in Support of Defendants' Motion To Dismiss (Dkt. No. 35-21) ("Serota Decl."), which reported on the content of those previously-released complaints and identified the same types of allegations found in the complaints the FTC released again in April 2014.

[5] *See, e.g.*, FAC Ex. 6 (Dkt. No. 55-3) at Ref. Nos. 40712836, 42627102, 40415752, 41102566, 43186736, 43091354, 42578776, 42487785, 40415751, 40687096, 43916983. It is obvious from Plaintiffs' excerpts in Exhibit 6 to the FAC that many of those complaints relate only to the Do Not Call Registry. The full text of the complaints released by the FTC, of which this Court previously took judicial notice (Order (Dkt. No. 48) at 6-7), makes this even more clear, as it separates out those complaints sourced from the National Do Not Call Registry. *See* Federal Trade Commission, Complaints Against Yelp (as of March 2014), *available at* http://www.ftc.gov/system/files/attachments/frequently-requested-records/yelpcmpts.xlsx.

1   Defendants explained in their Motion To Dismiss the Consolidated Complaint (Dkt. No. 34), many

2   of the complaints to the FTC simply reflect the frustration of some businesses in response to having

3   a listing on Yelp, getting any reviews at all, or Yelp's use of automated software to classify reviews

4   (an action protective of consumers and protected by law). *See Levitt v. Yelp! Inc.*, No. C-10-1321

5   EMC, 2011 WL 5079526, at *8-9 (N.D. Cal. Oct. 26, 2011) (explaining how the statutory

6   protection of Yelp's filtering benefits the public), *aff'd on other grounds*, 765 F.3d 1123 (9th Cir.

7   2014).  Others contain such irrelevant complaints as a Yelp-listed business's poor service (FAC

8   Ex. 6  (Dkt. No. 55-3) at Ref. No. 42328988) or a Yelp-listed business's failure to honor vouchers

9   *(id.* at Ref. Nos. 42942119, 42658262).

10         Having failed to produce any new material and having conceded that the substance of what

11   was released in April 2014 was already a matter of public record by prior release of 700 of the

12   complaints, the FAC tries to manipulate the facts and draw unwarranted conclusions.  The FAC

13   alleges that the FTC complaints released in 2014 show that the rate of the filing of complaints with

14   the FTC by members of the public was accelerating and had increased by "more than 600% in the

15   rate of complaints" for the five years prior to September 2012.  FAC (Dkt. No. 55) ¶74.  This

16   assertion is at once meaningless and misleading.  It is meaningless because Yelp never made any

17   representation as to the number or amount of complaints.  Instead, Yelp expressly disclosed its

18   expectation that "claims like these [would] continue and potentially increase in proportion to the

19   amount of content on our platform."  Serota Decl. Ex. A (Dkt. No. 35-1) at 20.

20         The alleged 600% "statistic" is, at best, highly misleading because the alleged increase in

21   complaints cited by Plaintiffs for 2012 to 2014 is calculated by a comparison to the five years

22   before 2012.  FAC (Dkt. No. 55) ¶74.  The two periods are not fairly compared to each other

23   because Plaintiffs fail to account for the massive growth in the number of reviews posted on Yelp's

24   sites during this time.  Yelp's Registration Statement and 10k filings show that there were only 9

25   million and 15 million reviews on its sites in 2009 and 2010 respectively.  Serota Decl. Ex. A (Dkt.

26   No. 35-1) at 51.  By 2012, however, the number of reviews had reached 36 million (*id.* Ex. F (Dkt.

27   No. 35-6) at 43) and then grew to over 66.6 million by the third quarter of 2014 (*id.* Ex. G (Dkt. No.

28   35-7) at 18).  Therefore, the Plaintiffs' attempt to allege a 600% increase in complaints to the FTC

- 7 -
YELP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT          3:14-cv-03547

1    based on the five years *before* 2012 as compared to the two years afterward is like comparing the

2    number of stocks with negative performance during the 1990s with the number in the 1970s without

3    disclosing that there were more than twice as many listed stocks during the 90s.[6]

4

5    **D.    The FAC Pleads No New Facts That Properly Allege That Yelp Misrepresented Its Advertising Sales Practices.**

6    With respect to the alleged tie between advertising and the filtering of reviews, the FAC

7    relies on the same consumer complaints that were found lacking by this Court when it dismissed the

8    Consolidated Complaint.  The FAC attempts again to characterize these as strongly corroborative as

9    to the timing of alleged removal or filtering of advertising.  But it adds nothing new.

10   The alleged fact that business owners observed changes in which reviews were filtered at

11   some point following a call from a sales representative is not probative of misconduct by Yelp or of

12   any fraudulent representation.  Before April 2014, Yelp disclosed that its automated

13   recommendation software continually reassesses which reviews to recommend based on new

14   information.  It disclosed that whether a review is filtered may change from day to day.  Serota

15   Decl. Ex. G (Dkt. No. 35-7) at 34.  Claims by businesses that reviews appearing on their Yelp

16   listings changed over time is entirely consistent with Yelp's disclosures.  And, of course, one would

17   expect complaints to be made by those feeling prejudiced by the filtering, not by the millions of

18   others feeling fairly treated.  The isolated out-of-context snapshots in Plaintiffs' allegations in the

19   FAC are insufficient to demonstrate that Yelp manipulates reviews based on advertising.  *See Levitt*

20   *v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 U.S. Dist. LEXIS 99372, at \*38-39 (N.D. Cal. Mar. 22,

21   2011).

22   A careful analysis of what is described in the FAC does not support any pattern of Yelp

23   filtering reviews based on advertising.  The FAC quotes only eight complaints in which a business

24   owner claims to have been told that Yelp would manipulate reviews in exchange for advertising.[7]

25   _____

26   [6] In 1970 there were 1,351 companies listed on the New York Stock Exchange. By 1999, that number had grown to 3,025.  NYSE Number of Listed Companies (1929-2002), NYSEData.com,

27   http://www.nyxdata.com/nysedata/asp/factbook/viewer_edition.asp?mode=table&key=3010&category=5.

28   [7] FAC (Dkt. No. 55) ¶¶10; 49(c) (xvi), (xxiv), (xxx), (xxxi), (xxxii), (xxxiii) (xxxv).

1      This is fully consistent with the Court's conclusion that this allegation was supported by "only a

2      handful of such complaints."  Order (Dkt. No. 48) at 15.

3              The list of the names of Yelp representatives mentioned in the FTC complaints compiled by

4      Plaintiffs and included at Exhibit 24 to the FAC adds nothing.  This list does not purport to be and

5      cannot be interpreted as a list of Yelp representatives who allegedly made a statement of any kind

6      contrary to Yelp's public statements about its policy of not linking advertising and filtering of

7      reviews.  Because of duplication of complaints, only 182, not 205 complaints list a Yelp

8      representative's name.  This is only 9% of the 2,046 total complaints.  More importantly, when

9      linked with the full text of the complaints, the list in Exhibit 24 contains only 22 complaints in

10     which a Yelp representative (named or unnamed) is alleged to have claimed that reviews may be

11     filtered or unfiltered based on advertising.[8]  Among the remaining entries, some complaints allege

12     statements from Yelp representatives *expressly disclaiming* a relationship between advertising and

13     review filtering. *Compare* FAC Ex. 24 (Dkt. No. 55-4), *with* Federal Trade Commission,

14     Complaints Against Yelp (as of March 2014), available at http://www.ftc.gov/system/files/

15     attachments/frequently-requested-records/yelpcmpts.xlsx, at Reference No. 38631276.  Others note

16     that positive reviews are being filtered *even after purchasing advertising* (*see, e.g.*, *id.* at Ref. Nos.

17     41564636, 45728999, 45907813).  Many have nothing to do with advertising at all.  *See, e.g.*, *id.* at

18     Ref. No. 22874274 (detailing reasons why medical clinic shouldn't be listed on Yelp); Ref. No.

19     35331189 (Yelp page inaccurately lists business as closed); Ref. No. 39900881 (non-Yelp

20     employee threatened complainant in response to a negative review); Ref. No. 46033904 (after

21     business appeared on TV show it received threats on various social media sites, including Yelp).

22

23

24

25

---

26     [8] Federal Trade Commission, Complaints Against Yelp (as of March 2014), available at http://
       www.ftc.gov/system/files/attachments/frequently-requested-records/yelpcmpts.xlsx, at Ref. Nos.
27     33765447, 44056386, 19961410, 23601974, 24897207, 30090382, 31895665, 31972245, 32641946,
       35566966, 37783165, 38967992, 39191104, 43180861, 43391354, 43707146, 44255925, 45609747,
28     47501265, 47969149, 49693276, 50389868.

### E.      Nothing In The FAC Pleads That The Release Of The FTC Complaints As To Advertising Materially Altered The Information Already Available To Investors.

Without adding new facts, the FAC includes additional argument as to materiality by emphasizing the importance of advertising to Yelp's revenue. FAC (Dkt. No. 55) ¶¶87-91. On this point, the FAC cites to *Mattrixx Initiatives, Inc. v. Siracusano*, —U.S.—, 131 S. Ct. 1309 (2011). In *Mattrixx*, defendants allegedly failed to disclose complaints Matrixx received from users and physicians concerning adverse effects caused by defendants' cold remedy and failed to disclose that Mattrixx was defending against products liability claims from two plaintiffs concerning such adverse effects. *Id.* at 1315. By contrast, the Court has taken judicial notice of the fact that Yelp had already disclosed the existence of complaints concerning its business practices about which it was aware. Serota Decl. Ex. A (Dkt. No. 35-1) at 16, 22 ("The media has previously reported allegations that we manipulate our reviews, rankings and ratings in favor of our advertisers and against non-advertisers. . . . [V]arious businesses have sued us alleging that we manipulate Yelp reviews in order to coerce them and other businesses to pay for Yelp advertising"). Yelp warned that the rate of such complaints may increase over time. *Id.* at 20. Accordingly, *Mattrixx* is inapposite.

The FAC provides powerful support for the Court's conclusion that the subject matter of the FTC complaints was already available to investors before April 2014 and that the release of additional complaints in April 2014 did not change the total mix of information. As set forth above, the FAC now admits that nearly 700 of the 2,046 released in April 2014 *had already been disclosed*. FAC (Dkt. No. 55) ¶72. The FAC makes no allegation that there is any substantive difference between the types of complaints released in 2012 and those released in 2014.

The FAC does not allege that Defendants knew about the additional complaints in the FTC's files before they were made public in April 2014. Yelp could not disclose information it did not have. Further supporting that the April 2014 disclosures were just "more of the same," the FAC cites to a Wells Fargo investment report on Yelp published days *before* the release of the FTC complaints stating that small businesses "frequently take to the local press to vent claims that Yelp

1    extends preferential treatment to small businesses that pay for advertising services." FAC (Dkt. No.

2    55) ¶70.

3    **II.     THE FAC DOES NOT SUFFICIENTLY PLEAD LOSS CAUSATION.**

4           As an independent basis to dismiss the Consolidated Complaint, this Court found that

5    Plaintiffs failed to allege with particularity "loss causation" as required by Ninth Circuit authority.

6    Order (Dkt. No. 48) at 17. The Court found that the release of the FTC complaints in 2014 did not

7    reveal fraud to the market, as required by *Loos v. Immersion Corp*. 762 F.3d 880, 887 (9th Cir.

8    2014). The Court concluded that "[t]he decline in Yelp's stock, like the decline in *Loos*, is

9    attributable to 'market speculation about whether fraud has occurred,' which simply 'cannot form

10   the basis of a viable loss causation theory.'" Order (Dkt. No. 48) at 19 (quoting *Loos*, 762 F.3d at

11   890).

12          The FAC offers no new facts to support its allegations of loss causation. The alleged factual

13   basis for this element continues to be nothing but the release of the FTC complaints in April 2014,

14   and the resulting publicity. *See* FAC (Dkt. No. 55) ¶¶99-106 (incorporating Paragraphs 71-77,

15   describing the release of the FTC complaints and the articles about them). Nothing in any of these

16   paragraphs addresses the essential and missing element of a revelation of fraud. Like *Loos* and the

17   cases cited therein, these disclosures, at most, rise to the level of alleged or suspected fraud but not

18   to the level of revealing that fraud exists.

19          FAC Paragraph 89 refers to the results of an "event study" by an unnamed "Certified

20   Financial Analyst." FAC (Dkt. No. 55) at 55 ¶89 n.34. The FAC claims that the study establishes

21   that the decline in the value of Yelp stock was "most likely" caused by the release of the

22   information about the FTC complaints in The Wall Street Journal on April 2, 2014. *Id*. ¶89. The

23   FAC does not name the person who prepared the study or his or her qualifications to do so.

24          There are at least three reasons why the inclusion of the "event study" in the FAC fails to

25   cure the deficiencies in the loss causation pleading. First, an event study merely seeks to match

26   stock price movements with information in the market. It does not establish that the information

27   revealed in April 2014, was materially different from information already in the market or from

28   market risks that the issuer already revealed. It does not bear at all on the crucial question under

1    Ninth Circuit law as to whether the stock price decline was caused by the revelation of fraud or just

2    by investor concern over possible fraud.  Second, an event study is not a fact, it is an opinion. It

3    cannot substitute for factual pleading.  Third, an event study is only as good as the information that

4    is inputted into the study and the assumptions built into the analysis, which are qualitative decisions

5    by the researcher.  *See, e.g.*, FAC Ex. 1 (Dkt. No. 55-1) at 9-10.  The reference to an "event study"

6    in the FAC fails to reveal the name or qualifications of the person who prepared the study or the

7    various inputs made to yield the data cited in the FAC.

8         The FAC's attempt to link the stock drop in early April 2014 to the disclosure of complaints

9    about specific types of conduct by Yelp is undermined by some of the additional allegations in the

10   FAC.  The exhibits attached to the FAC show that the market reaction in the early days of April

11   occurred *without reference to the subject matter* of the complaints released by the FTC.  This

12   destroys the alleged connection between any of Yelp's prior statements at issue in the FAC and the

13   stock drop.  The Wall Street Journal article that Plaintiffs claim caused the stock drop reported only

14   that it had received FTC complaints through a FOIA request, but provided *no information about the*

15   *content of these complaints*.  *See* FAC Ex. 7 (Dkt. No. 55-3) ("On Wednesday, the Federal Trade

16   Commission disclosed on its website that it received 2,046 complaints about Yelp from 2008

17   through March 4 of this year, noting that its disclosure was part of a Freedom of Information Act

18   request from The Wall Street Journal").  The article from The Street cited at FAC Paragraph 77 and

19   Exhibit 8, refers to the FTC release of complaints, but says that "[t]he exact nature of the complaints

20   are unknown."  It goes on to say that its downgrade of Yelp's stock was based on its "disappointing

21   return on equity."  FAC Ex. 8 (Dkt. No. 55-3).  The SunTrust Robinson Humphrey report states:

22   "The complaints have not necessarily been verified by the FTC and *we do not know the exact nature*

23   *or detail of the complaints*."  FAC ¶78 & Ex. 9 (Dkt. No. 55-3) (emphasis added).  The

24   MTNewswire report cited at Paragraph 79 and Exhibit 11 (Dkt. No. 55-3) contains no discussion of

25   the subject matter of the FTC complaints.

26        Given the fact that these publications *did not disclose the subject of the complaints* released

27   by the FTC, the FAC's attempt to link the stock drop with alleged disclosure of fraud related to

28   either unreliable reviews or advertising manipulation is now even more clearly a case of speculation

- 12 -

1    and improper inference. That falls far short of meeting the particularized pleading standard

2    applicable to loss causation.

3    **III.    THE FAC DOES NOT CONTAIN FACTS SUFFICIENT TO CREATE A STRONG
         INFERENCE OF SCIENTER.**

4

5         This Court also dismissed the Consolidated Complaint because it failed to properly plead

6    facts giving rise to an inference of scienter that is "cogent and compelling."  Order (Dkt. No. 48) at

7    20-23 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).  First, the

8    Court found that the Consolidated Complaint did not sufficiently allege that any of the individual

9    defendants knew "the veracity of complaints made by individual local business owners . . . that

10   reviews of their business were not credible or were being manipulated by Yelp employees because

11   they had declined to advertise."  *Id.* at 21.  Second, the Court held that Plaintiffs' allegations

12   concerning stock sales by alleged insiders during the class period failed for lack of sufficient

13   context to establish that the timing and amount of stock sales were suspicious:  "The Court has no

14   basis on which to conclude that there exists a strong inference that these sales were out of line with

15   prior trading practices because the Complaint does not allege any information regarding the

16   insider's prior trading practices."  *Id.* at 23; *see Ronconi v. Larkin*, 253 F.3d 423, 434-37 (9th Cir.

17   2001); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1064 (9th Cir. 2014).

18   As we show below, the FAC does not overcome these defects.

19

20        **A.    The Newly Alleged "Facts" Do Not Establish "Suspicious" Sales Of Stock By
              Insiders During The Alleged Class Period.**

21        Despite this Court's holding that a factual context for sales of stock during the class period

22   is required to consider whether such stock sales are relevant to scienter, the FAC again fails to

23   provide any prior context for the sales made during the class period.  The FAC offers no factual

24   allegations concerning the insiders' trading patterns prior to or after the class period.  In their

25   motion to dismiss the Consolidated Complaint, Defendants demonstrated through SEC Form 4s that

26   sales by the alleged insiders during the class period were consistent with prior patterns and, in most

27   of the material cases, the result of 10b5-1 stock sales plans.  *See* Serota Decl. Exs. H-R (Dkt. Nos.

28   35-8 through 35-18) (Form 4s and summaries thereof, including disclosure of 10b-5 trading plans).

1    The Court took judicial notice of these Form 4s.  Order (Dkt. No. 48) at 6.  These facts and the

2    summaries derived from them (Dkt. Nos. 35-8 through 35-18) remain undisputed.

3         The FAC adds only one new "fact" to its stock sales allegations—the percentage of Class A

4    common stock allegedly sold by certain insiders.  FAC (Dkt. No. 55) ¶66.  It alleges that the Class

5    A stock had one vote per share, while Class B had 10 votes per share.  *Id*. at 42 ¶66 n.23.  The FAC

6    infers that the insiders identified in the FAC preferred to liquidate shares with lower voting power

7    and retain their higher voting shares.  Assuming that these facts are accurate, the relevance to

8    scienter is unexplained.  We are aware of no case that suggests that the sale of lower voting shares

9    and the retention of higher voting shares demonstrates a nefarious motive.  The Ninth Circuit has

10   held that all holdings of company securities should be taken into account when looking to see if

11   trading by insiders justifies any inference of scienter.  *In re Silicon Graphics Inc. Sec. Litig.*, 183

12   F.3d 970, 986-87 (9th Cir. 1999) (rejecting plaintiff's attempt to treat sales of stock differently from

13   sales of vested options).

14        Nor do the overall percentages of stock sold during the class period suggest any inference of

15   scienter.  The three named defendants—CEO Stoppelman, COO Donaker, and CFO Krolik—are

16   alleged to have sold only 2.1%, 9.1%, and 22.76% of their overall holdings in both classes of Yelp

17   stock during the class period.  These percentages are far less than percentages that the Ninth Circuit

18   has rejected as relevant to scienter.  *See, e.g.*, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094-

19   96 (9th Cir. 2002) (insiders allegedly sold between 13% and 74% of holdings); *Ronconi v. Larkin*,

20   253 F.3d 423, 435-36 (9th Cir. 2001) (between 10% and 98%); *In re Silicon Graphics*, 183 F.3d at

21   987 (between 2.6% and 75.3%).

22        For these reasons, references in the FAC to stock sales by insiders fail for the same reasons

23   that this Court held that similar allegations in the Consolidated Complaint were inadequate.

24        **B.       Nothing In The FAC Provides Any Other Facts Sufficient To Plead Scienter.**

25        Nor does the FAC contain any facts that suggest that any of the individual defendants were

26   aware of and intentionally made false statements to the investing public.  Once again, the FAC

27   relies on conclusory statements or non-sequitors.  Paragraphs 30-32 contain nothing more than the

28   types of conclusions about the named defendants' positions of authority that this Court previously

rejected as insufficient to provide a basis to infer scienter.  Order (Dkt. No. 48) at 21-22.  The

discussion in Paragraphs 33-35 repeats what was alleged in Paragraphs 32-34 of the Consolidated

Complaint without adding any additional facts.

**IV.     BECAUSE PLAINTIFFS CANNOT ALLEGE A CLAIM UNDER SECTION 10(b), THE SECTION 20(a) CLAIM MUST ALSO BE DISMISSED.**

Plaintiffs assert a controlling person claim under Section 20(a) of the 1934 Act.  Section

20(a) requires, *inter alia*, an underlying violation of the 1934 Act.  *Heliotrope Gen., Inc. v. Ford*

*Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999).  Because Plaintiffs have failed to plead a 10(b)

violation, the Court must also dismiss the claim under Section 20(a).

**CONCLUSION**

Plaintiffs filed initial complaints and then a new, Consolidated Complaint.  Plaintiffs were

then given an opportunity to amend after this Court granted Defendants' Motion To Dismiss the

Consolidated Complaint.  Given their multiple opportunities to plead a claim for relief and the

multiple recurring defects identified herein, this Complaint now should be dismissed in its entirety

with prejudice and without leave to amend.

DATED:  June 26, 2015                                ARNOLD & PORTER LLP


By:     /s/ Gilbert R. Serota
        Gilbert R. Serota
        gilbert.serota@aporter.com
        Marjory Gentry
        marjory.gentry@aporter.com
        Ryan M. Keats
        ryan.keats@aporter.com
        Attorneys for Defendants
        YELP INC., JEREMY STOPPELMAN,
        ROBERT J. KROLIK, and GEOFFREY
        DONAKER